AGREEMENT

BY AND BETWEEN

THE CLEVELAND DRAYMEN ASSOCIATION, INC.

(NORRIS BROTHERS)

AND

TEAMSTERS UNION LOCAL NO. 407, Affiliated
with the
INTERNATIONAL BROTHERHOOD OF TEAMSTERS

SEPTEMBER 1, 2011 – AUGUST 31, 2014



**EXHIBIT**

tabbies®

A

## RIGGERS'
## STANDARDS OF EXCELLENCE

1.) ADHERE TO MY RESPONSIBILITIES UNDER THE COLLECTIVE BARGAINING AGREEMENT FOR START AND QUIT TIMES, AS WELL AS LUNCH AND BREAK TIMES.

2.) ALLOW MY REPRESENTATIVES TO HANDLE ANY DISAGREEMENTS OR BREACHES BY REFUSING TO ENGAGE IN UNLAWFUL JOB DISRUPTIONS, SLOWDOWNS OR ANY ACTIVITIES THAT AFFECT OUR GOOD NAME.

3.) RESPECT THE CUSTOMERS AND EMPLOYERS RIGHTS, PROPERTY AND TOOLS AS I DO MY OWN.

4.) MEET MY RESPONSIBILITY TO SHOW UP EVERY DAY; OUTFITTED FOR WORK AND FIT FOR DUTY WITHOUT ENGAGING IN SUBSTANCE ABUSE.

5.) COOPERATE WITH THE CUSTOMER AND EMPLOYER TO MEET THEIR STATUTORY, REGULATORY AND CONTRACTUAL RESPONSIBILITIES TO MAINTAIN A SAFE, HEALTHY AND SANITARY WORKPLACE.

6.) DO MY BEST TO WORK IN A MANNER CONSISTENT WITH THE QUALITY, PRODUCTIVITY AND SAFETY OF EVERY TASK THAT I AM ASSIGNED.

7.) DO MY BEST TO HELP EVERY CO-WORKER RETURN HOME SAFE AT THE CONCLUSION OF EVERY SHIFT.

**TABLE OF CONTENTS**                                    **Page**

JURISDICTION                                                6

Article I - Membership, Wages and Hours                     7
          Section 1.      Membership                        7
          Section 2.      Wage Scale                        8
          Section 3.      Working Hours                     10

Article II - Reporting on the Job Away from the Terminal    13
          Section 1.      Travel Expense or Car Fare        13
          Section 2.      Reporting on the Job with the 65-Mile Zone    13
          Section 3.      Reporting on the Job Beyond the 65-Mile Zone  13

Article III - Vacation and Holiday                          14
          Section 1.      Holiday and Vacation Time         14
          Section 2.      Vacation Period                   15
          Section 3.      Military Service                  15
          Section 4.      Holidays                          15

Article IV - Health and Welfare and Pension                16
          Section 1.      Computation                       16
          Section 2.      Health and Welfare Fund           16
          Section 3.      Pension Fund                      17
          Section 4.      Delinquent Contributions          18

Article V - General Duties of Employers and Employees      19
          Section 1.      Further the Cause of the Industry 19
          Section 2.      Equipment, Accidents, Reports     19
          Section 3.      Stolen Goods                      20
          Section 4.      Physical or Mental Examinations   20
          Section 5.      Checking Goods                    21
          Section 6.      Violations of Rules and Regulations    21
          Section 7.      Damaged Equipment and Goods       21
          Section 8.      Proper Use of Manpower            21
          Section 9.      Non-Conflict                      21
          Section 10.     Instructions to Crew              21
          Section 11.     Seniority                         21
          Section 12.     Tools                             22

Article VI – Seniority                                      22
          Section 1.      Seniority List                    22
          Section 2.      Assignment of Work                24
          Section 3.      Layoffs                           25
          Section 4.      Military Service                  25

Section 5.      Time Clocks      25

Article VII - Suspension of License      25

Article VIII - Check-Off      25

Article IX - Trade Shows, Etc.      26

Article X - Lunch Period      26

Article XI - Other Employment      27
      Section 1.      Exceptions, Layoff      27

Article XII – Garnishment      27

Article XIII - Funeral Clause      28

Article XIV – Jury Duty      28

Article XV – On-the-Job Injury      28

Article XVI - Two (2) Week Military Leave      29

Article XVII – Miscellaneous      29
      Section 1.      "Lift Trucks" or "Cats"      29
      Section 2.      Hazardous Materials      29
      Section 3.      Recall      29
      Section 4.      Apprenticeship Program      29
      Section 5.      Return Rights if Elected to Union Office      30
      Section 6.      Rigger Certification      30
      Section 7.      Standards to Wearing Apparel      30
      Section 8.      Collectively Bargained Workers
                  Compensation Program      30

Article XVIII – Stewards      31
      Section 1.      Job Stewards      31
      Section 2.      Work Stoppages      31

Article XIX - Struck Goods      32

Article XX - Non-Discrimination      31

Article XXI - Disputes and Arbitration      32
      Section 1.      Disciplinary Action      32
      Section 2.      Work Stoppages      32
      Section 3.      "Sympathy Strikes"      32

Section 4.     Violations                                         33
Section 5.     Causes for Discharge                              34

Article XXII - Grievance Procedure                               35

Article XXIII - ADA and Family & Medical Leave                  38

Article XXIV - Separability and Savings Clause                  38

Article XXV - Emergency Reopening                               38

Article XXVI - Effective Date                                    39

Article XXVII - Other Agreements                                 39

**SEPTEMBER 1, 2011 - AUGUST 31, 2014**

THIS ARGEEMENT made and entered into this first (1ˢᵗ) day of September 2011, by and between the undersigned, THE CLEVELAND DRAYMEN ASSOCIATION, INC., whose members are hereinafter to as the "Employer" and TEAMSTERS UNION LOCAL NO. 407, affiliated with the INTERNATIONAL BROTHERHOOD OF TEAMSTERS, hereinafter referred
to as the "Union".

The Cleveland Draymen Association, Inc., a corporation composed of firms, persons, and corporations engaged in the moving, rigging, and erecting industry within, to, and from the City of Cleveland, Ohio, have joined together as one group.

The Local is a voluntary organization composed of persons employed in the moving, rigging, and erecting industry, some of whom are employed by the Employer.

The above parties desire to stabilize employment in the said industry, to agree upon wage rates, standards, and conditions of employment, and to eliminate strikes, lockouts, boycotts, stoppages of work, and other forms of industrial disturbances, and do further desire to regulate the mutual relationship between the employers and employees in the industry in this vicinity, with the view of securing harmonious cooperation between them, and with the further view of establishing ways and means for collective bargaining and for settlement of grievances and disputes.

Corporate reorganizations by a signatory Employer occurring during the term of this Agreement shall not relieve the signatory Employer of the obligation of this Agreement during its term.

THEREFORE, the said Employer and the said Local, acting by their duly authorized representatives in conference, and after due consideration and study of the matters hereinafter treated and upon approval of the said employers and employees, hereby agree:

## JURISDICTION

The Employer shall assign all of the following work to Riggers, members of Truck Drivers Union, Local No. 407, working under this Movers, Riggers and Erectors Agreement: all operations of lift trucks, winches mounted on trucks, tractors, or "cats," "cats" when used in moving machinery, rigging, or erecting, or on the handling of any stock or materials (as in a plant move), or any rigging work. A member of Local No. 407 shall be used as a flagman for overweight, over-width loads or over-height loads, loading

or unloading freight, materials and machinery in connection with a machinery moving, rigging, or erecting job shall be covered by this Agreement.

Any Employer's tools or materials transported to any company job site by truck shall be the exclusive work of Truck Drivers Union Local No. 407. The only exception to this shall be where there is a signed letter of agreement in effect with another craft, and such agreement is on file with Truck Drivers Union Local No. 407. The operation of lift trucks, etc, on any job site shall be the jurisdiction of members of Truck Drivers Union Local No. 407, unless the jurisdiction has been agreed to otherwise at a pre-job conference. Tools and equipment may be transported out of town by union common carrier, wherever possible. Any complaint shall be subject to the grievance procedure.

The Employer shall not assign any of the above-mentioned work to another craft until the jurisdiction of the work has been agreed to by the authorized representative of Truck Drivers Union Local No. 407, the other craft or crafts concerned, and the Employer, provided that the jurisdictional questions have been resolved by Truck Drivers Union Local No. 407, Joint Council No. 41, and other interested labor organizations in either a pre-job conference and/or through the Cleveland Building Trades Council, and further provided that such jurisdictional questions are resolved in ample time to permit the job to commence uninterrupted and without threats of jurisdictional disputes. Jobs which shall be assigned to Riggers or "emergency" jobs shall not require a pre-job conference.

In the event the Employer shall not schedule a pre-job conference prior to the start of the job, this matter shall be subject to the grievance procedure. The award by the grievance committee, because the pre-job conference was not held, shall be limited to the payment of four (4) hours per day to the number of seniority employees who were not working during the period of the job, equal to the number of people on the job, and such liability shall be limited to the period of the job, but such liability shall not exceed ten (10) working days.

There shall be no liability incurred for first violation in a calendar year.

# ARTICLE I
## MEMBERSHIP, WAGES, AND HOURS

### Section 1. MEMBERSHIP

(a)   This Agreement shall govern only the working conditions and wage schedules of the classifications mentioned herein.

The Union shall be the sole representative of those classifications of employees as covered by this Agreement in collective bargaining with the Employer.

All present employees who are members of the Local Union on the effective date of this subsection or on the date of execution of this Agreement, whichever is the later,

shall remain members of the Local Union in good standing as a condition of employment. All present employees who are not members of the Local Union and all employees who are hired hereafter shall become and remain members in good standing of the Local Union as a condition of employment on and after the thirty-first (31st) day following the beginning of their employment or on and after the thirty-first (31st) day following the effective date of this subsection or the date of this Agreement, whichever is the later. An employee who has failed to acquire, or thereafter maintain, membership in the Union as herein provided, shall be terminated seventy-two (72) hours after his Employer has received written notice from an authorized representative of the Local Union, certifying that membership has been, and is continuing to be, offered to such employee on the same basis as all other members, and, further, that the employee has had notice and opportunity to make all dues or initiation fee payments. This provision shall be made and become effective as of such time as it may be made and become effective under the provisions of the National Labor Relations Act.

For purposes of this Article, employees who are hired hereafter shall include "casual employees." Such "casual employees" will be required to join the Union prior to their employment on or after the thirty-first (31st) day following their first (1st) day of employment for any Employer signatory to this Agreement.

(b) All members of Local Union No. 407 shall be paid by their Employer once each week (not including, however, such holdover that the Employer may have in effect for accounting purposes, which holdover period shall in no event exceed two (2) weeks). In the event of an error in a payroll payment, same shall be corrected in the following pay period. The regular minimum wage scale to be paid by the Employer to members of the Union employed as hereinafter specified shall be as follows:

**Section 2. WAGE SCALE**

(a) Rates for the respective classifications:

**NEW WAGES/BENEFITS INCREASE - $0.35 (9/1/2011); $0.35 (9/1/2012) and $0.35 (9/1/2013)**

**RIGGERS**

| Rates Per Hour | Effective 9/1/2011 | Effective 9/1/2012 | Effective 9/1/2013 |
|---|---|---|---|
| Wages | $28.31 | $28.66 | $29.01 |
| Healthcare | $7.04 | $7.39 | $7.74 |
| Pension | $5.78 | $6.24 | $6.61 |
| Holiday & Vacation* | ($1.60) | ($1.60) | ($1.60) |
| Supplementary | $4.19 | $4.19 | $4.19 |

Costs**

| | | | |
|---|---|---|---|
| Totals | $45.32 | $46.48 | $47.55 |

**FOREMAN** *** Foreman to receive $2.00 above the Rigger Journeyman wage rate.

| Rates Per Hour | | Effective 9/1/2011 | Effective 9/1/2012 | Effective 9/1/2013 |
|---|---|---|---|---|
| Wages | | 30.31 | 30.66 | 31.01 |
| Healthcare | | 7.04 | 7.39 | 7.74 |
| Pension | | 5.78 | 6.24 | 6.61 |
| Holiday & Vacation* | | ($1.60) | ($1.60) | ($1.60) |
| Supplementary Costs** | | 4.19 | 4.19 | 4.19 |
| Totals | | 47.32 | 48.48 | 49.55 |

## GENERAL FOREMAN****

| Rates Per Hour | | Effective 9/1/2011 | Effective 9/1/2012 | Effective 9/1/2013 |
|---|---|---|---|---|
| Wages | | 30.81 | 31.16 | 31.51 |
| Healthcare | | 7.04 | 7.39 | 7.74 |
| Pension | | 5.78 | 6.24 | 6.61 |
| Holiday & Vacation* | | ($1.60) | ($1.60) | ($1.60) |
| Supplementary Costs** | | 4.19 | 4.19 | 4.19 |
| Totals | | 47.82 | 48.98 | 50.05 |

\*    Holiday & Vacation are deducted and paid in accordance with Article III.

\*\*    Supplementary Costs.  Supplementary costs represent money provided by the Employer to make contributions to Central States Health & Welfare and Pension Plans for an employee while he is not working because of holiday, vacation, on-the-job injury, illness, layoff under specified conditions, funeral leave, and any occurrence not mentioned herein but which may require contributions because of this contract.

\*\*\*    The foreman receives $2.00 above the Rigger Journeyman.

**** The General Foreman receives $2.50 above the Rigger Journeyman.

(b) Whenever commodities coming under this contract are engaged in a transportation move where the driver and flagman are not involved in rigging work, such move shall be made under the applicable Teamster contract with Local Union No. 407, Road or City, as the case may be.

(c) The Union, in an effort to further the causes and interests of the industry, submits a wage scale for Movers, Riggers and Erectors that are employed and utilized in the moving of tool room fixtures and stock. The total hourly wage rate shall be $25.31 effective 9/1/2011; the total hourly wage rate effective 9/1/2012 shall be $25.66; and the total hourly wage rate effective 9/1/2013 shall be $26.01. No reduction in health and welfare and pension payments. A pre-job conference shall be held with the Union and/or the shop steward and the Employer before the job is accepted. The work is to be done on a voluntary basis.

(d) When the company implements a designated driver, the Employer shall put up a bid for this job. This assignment will be permanent. There shall be no bumping by either craft. His duties shall include but be not limited to loading and unloading Employer's tools and equipment. The wage scale to be:

| | | |
|---|---|---|
| Effective 9/1/2011 | $25.31 per hour | 4 hour minimum |
| Effective 9/1/2012 | $25.66 per hour | to be distributed between |
| Effective 9/1/2013 | $26.01 per hour | wages fringes |

Central States health, welfare and pension shall apply to this driver classification as well as other conditions in the rigger contract, other than wages as set forth above.

## Section 3. WORKING HOURS

The working schedule and hours of employment for Movers, Riggers and Erectors shall be as follows:

(1) Time and one-half (1 1/2) shall be paid for all time worked prior to 6:00 a.m. and after 8:00 p.m.

(2) Saturday shall be time and one-half (1 1/2) times the prevailing hourly rate.

(3) Sunday shall be two (2) times the prevailing hourly rate. Any continuation of Sunday work into Monday shall be paid at one and one-

half (1 1/2) times the prevailing hourly rate, subject to Article I, Section 3, Paragraph (8).

(4)     No member of the Union who has started to work shall be paid less than four (4) consecutive hours pay during any work day.

(5)     Members who have been called to work and are not put to work shall receive two (2) hours pay for the day.

(6)     Any member working a combination of work within the jurisdiction of Local Union No. 407 shall be guaranteed eight (8) hours work for that day – four (4) hours guarantee is applied to the Movers, Riggers and Erectors Agreement. Other work shall be paid by classification. However, time and one-half (1 1/2) is applied after eight (8) hours for whatever classification he concludes his day's work.

(7)     There must be eight (8) hour breaks between tours of duty. In the event an employee is recalled to report to work prior to the expiration of eight (8) hours from his last tour of duty, and does report to work, he shall be paid at the rate of time and one-half (1 1/2) regardless of the number of hours worked immediately prior thereto.

(8A)    When shifts are required, the first shift shall work eight (8) hours at the regular straight-time hourly rate of pay. The second shift shall work seven and one-half (7 1/2) hours and receive eight (8) times the regular straight-time hourly rate plus twenty-five cents ($.25) per hour. The third shift shall work seven (7) hours and receive eight (8) times the regular straight-time hourly rate plus fifty cents ($.50) per hour. It is understood that all payments to the fringe benefits and wage deductions will be based on eight (8) hours.

(8B)    A thirty (30) minute unpaid lunch period shall be scheduled at the midpoint of the schedules work shift.

(8C)    The first shift shall begin between 6:00 a.m. – 9:30 a.m.; the second shift shall begin between 2:30 p.m. – 6:00 p.m.; and the third shift shall begin between 10:00 p.m. – 1:30 a.m. Shifts shall not overlap. An employer may work a second and/or a third shift without a first shift as long as the appropriate shift differential pursuant to this article is paid.

(8D)    All other time worked before or after the regular established shifts set forth above shall be paid at the appropriate overtime rate.

(8E)    The employer shall have the option to assign work 4-10 hour shifts at straight time. The employer shall perform a pre-job with the steward or business agent for approval before commencing this work. The 4-10 hour

shifts can be Monday thru Thursday or Tuesday thru Friday. If a job does not last four days then overtime will be paid at the applicable rate in accordance with the contract. Employee can work Friday and Monday in his regular seniority spot after all other employees are working and prior to casual employees.

(9)    A composite crew shall be defined to mean a crew of men consisting of various trades required due to jurisdictional agreements performing a service normally performed by a rigging contractor. The other trades do not necessarily have to be on the payroll of the Employer signatory to this Agreement in order to qualify as a composite crew. A crew shall not be considered a composite crew by virtue of another independent contractor performing his normal line of service. When required to work with a composite crew employed by a party to this Agreement composed of "trades," any premium method of computation of the "trades" shall be applicable to any overtime worked by employees covered under this Agreement. If the nature of the job requires a pre-job conference, then one (1) general foreman, if required, shall be selected at such pre-job conference. The pre-job conference shall determine the order of layoff.

If the "composite crew" job lasts three (3) days or more, a steward shall be designated by the Local Union. If this particular job lasts three (3) days or more, the steward's pay shall be retroactive to the start of the job, providing any steward from the "trades" receives additional remuneration. The Local Union No. 407 steward shall then be compensated at the same differential as the "trades" steward. A crew shall not be composite by virtue of working with an Operating Engineer.

(10)    When required to go from one job site to another job site in private transportation, each man shall be compensated as follows: $.30 per mile in addition to the hourly rate. Passengers shall be limited to employees of the contractor.

(11)    Past practice of the Employer with regard to parking shall prevail.

(12)    Members of Local Union No. 407 shall transport tools. Any complaint shall be subject to grievance procedure (*see* Jurisdiction).

(13)    Whenever a shift has begun and an employee is called to work on that shift, such employee's time shall begin from such telephone call, provided he reports on the job within one hour, or due to extenuating circumstance, within a reasonable amount of time, except when replacing an absentee member. Pay for replacement shall be for actual hours worked.

(14)    Irregular Starting Time – The Employer shall have the option to start a job at a time requested by the customer, which has been reviewed with the

business agent or company steward. Employees working on such a job shall receive eight (8) hours pay for seven (7) hours work. Premium time shall be paid for actual hours worked over seven (7) hours.

In the event that these hours cannot be worked due to circumstances beyond the Employer's control, the employee will be paid for two (2) hours show-up time, or if the job has commenced, he will receive four (4) hours pay minimum.

This job shall not last more than two (2) days, unless mutually agreed to in writing.

(15) All pre-job conferences are to be held by the Employer with a Local Union No. 407 business agent or a mutually-agreed-to person before the job is commenced.

## ARTICLE II
## REPORTING ON THE JOB AWAY FROM THE TERMINAL

### Section 1. TRAVEL EXPENSE OR CAR FARE

When requested to report on the job, carfare or travel expense, when applicable, shall be paid on the radial mileage system with the Cleveland Public Square being the starting point. This travel expense or carfare shall be paid to the employee as an expense item on a separate voucher. A map of Northeastern Ohio properly marked with radial zones from 0 to 65 miles shall be the basis for determining the zones.

### Section 2. REPORTING ON THE JOB WITHIN 65-MILE ZONE

When reporting on the job within the 65-mile zone, the employee shall be paid the current hourly rate only for that time spent on the job. When the employee reports on the job within the thirty-five mile zone, no travel expense or carfare shall be paid. When reporting on the job beyond the thirty-five (35) mile zone, travel expense or carfare up to the sixty-five (65) mile zone shall be paid in accordance with the radial mileage system chart shown below:

| | |
|---|---|
| 35-40 | $13.50 |
| 40-45 | $15.00 |
| 45-50 | $18.00 |
| 50-65 | $21.00 |

### Section 3. REPORTING ON THE JOB BEYOND THE 65-MILE ZONE

When requested to work on a job beyond the 65-mile zone lasting more than one (1) day, the employee shall then lay over and be paid room and board within reason by the Employer. This will include daily meal expenses of $40 per diem and single room

lodging accommodations. In the event that the job lasts longer than one (1) week, room and board expense shall be paid for all days away from Cleveland, Ohio, and the Employer is not obligated to work or pay the employee for Saturdays and Sundays; however, the employee shall be allowed to work every day during the regular work week. The current hourly rate shall be paid to the employee while traveling to the job location at the beginning, and again upon completion, the hourly rate shall be paid back to Cleveland. Travel expense or carfare shall be paid as set forth in Article I, Section 3(10) to the employee when traveling the first (1st) day to the job site and again when returning to Cleveland at the completion of the job, with mileage being computed from the Public Square. If the Employer elects to have the employee travel by air, bus, truck, or other suitable means of transportation, the Employer shall pay for such transportation, and the employee shall be paid the current hourly rate while using such transportation.

Section 3 (a ) When an employee is out of town for two (2) weeks and over, the employer will pay for transportation back to Cleveland once every two (2) weeks.

## ARTICLE III
## VACATION AND HOLIDAY

### Section 1. HOLIDAY AND VACATION TIME

Holiday and vacation pay shall be computed to an hourly rate as specified in the contract. When working any premium time, holiday and vacation pay to be paid at the premium time rate. The employer shall accrue on his records the amounts due each employee. The Employer shall pay these amounts as follows:

(a) Regular employees shall receive such payments twice annually;

(1) The first (1st) payment shall be included with his regular pay during the first (1st) week of the first pay period in June. Such payment shall be by separate check.

(2) The second (2nd) payment shall be included with his regular pay during the first (1st) week of the first pay period in December. Such payment shall be by separate check.

(3) Any unexcused absenteeism, including personal days, in excess of three (3) per calendar year will be deducted from vacation days.

(b) The casual or temporary employee shall receive holiday and vacation pay with his regular paycheck.

(1) Deductions are ($1.60) per hour.

(c)    Employees at their option will be will be paid vacation pay with his/her regular paycheck.

Employees must notify Employers of their decision prior to January 1.

(2) Maximum allowable vacation time shall be as follows:

For the period commencing 9/1/2011 through 8/31/2014:

| | |
|---|---|
| date of start – 1 year service | one week |
| start of 2nd year – 7th year | two weeks |
| start of 8th year – 14th year | three weeks |
| start of 15th year – 19th year | four weeks |
| start of 20th year - | five weeks |

## Section 2. VACATION PERIOD

The vacation period shall be set by the Employer, with due regard to the desire, seniority, and preference of the employee, consistent with efficient operation.

Whenever an employee works under this Agreement and another agreement under the jurisdiction of Local Union No. 407, he shall be paid for vacation in accordance with that contract under which he has worked at least fifty-one percent (51%) of the time.

## Section 3. MILITARY SERVICE

Any employee who has been employed by his Employer for one (1) year and who was subject to compulsory military service and who enters such military service, shall have the compulsory length of time spent in such service accrue towards his vacation eligibility time upon the completion on one (1) year after date of reinstatement, in the sole service of his Employer.

## Section 4. HOLIDAYS

(a)    The nine (9) recognized holidays are:  New Year's Day, Decoration Day, Fourth of July, Labor Day, Thanksgiving Day, the day after Thanksgiving, December 24th, Christmas Day, and Good Friday.

(b)    All work performed by employees on New Year's Day, Decoration Day, Fourth of July, Labor Day, Thanksgiving Day, the  Day After Thanksgiving, December 24th, Christmas Day, and Good Friday shall be paid for at double the regular wage rate, with a minimum of four (4) consecutive hours.  It is agreed that no employee shall be compelled to work on Labor Day.

(c) Any continuation of work performed on a holiday into the next day shall be compensated for at one and one-half (1 1/2) times the prevailing hourly rate, subject to

Paragraph "Shifts", Article I, Section 3, Paragraph (8). In the event the following day would be a Sunday, the double time rate shall continue.

## ARTICLE IV
## HEALTH AND WELFARE AND PENSION

### Section 1. COMPUTATION

Health and welfare and pension shall be computed on an hourly basis consistent with the Freight Agreement, and to maintain the present level of benefits with the Freight Agreement shall be paid by the Employer directly to the appropriate fund (pension to Central States, Southeast and Southwest Areas Pension Fund, Chicago, Illinois; health and welfare to Central States, Southeast and Southwest Areas Health and Welfare Fund, Chicago, Illinois).

### Section 2. HEALTH AND WELFARE FUND

(a) Once an employee has qualified for any Employer and thereby becomes eligible, he shall thereafter remain qualified, consistent with the qualifications and eligibility requirements in the trust agreement and the insurance policy or policies, for any subsequent Employer.

(b) If an employee is absent because of illness or off-the-job injury (which can be verified by a doctor or hospital statement) and notifies the Employer of such absence, the Employer shall continue to make the required contributions for a period of four (4) weeks. If an employee is injured on the job, the Employer shall continue to pay the required contributions until such employee returns to work; however, such contributions shall not be paid for a period of more than twelve (12) months. Such contributions shall be the minimum amount required to maintain the employee in an eligible status. If an employee is granted a leave of absence, such employee shall make arrangements to pay or have paid the required amount of monies to the health and welfare fund for the period of the leave of absence.

(c) Notwithstanding anything herein contained, it is agreed that in the event any Employer is delinquent at the end of a period in the payment of his contributions to the Central States, Southeast and Southwest Areas Health and Welfare Fund, in accordance with the rules and regulations of the Trustees of the Central States, Southeast and Southwest Areas Health and Welfare Fund, such Fund shall have the right to take such action as it deems necessary until such delinquent contributions are made, and it is further agreed that in the event such action is taken, the Employer shall be responsible to the employees for any losses resulting therefrom. Before a leave of absence may be

approved by either the Employer or the Union, the employee must make arrangements with his Employer to deposit with him such sum to pay for his contributions for the period of the leave of absence or an extension thereof pursuant to the Agreement.

(d) The Employer shall make hourly contributions for health and welfare to the Central States, Southeast and Southwest Areas Health and Welfare Fund for each regular employee on his payroll as follows:

| | |
|---|---|
| Effective September 1, 2011 | $281.70 per week |
| Effective September 1, 2012 | $295.70 per week |
| Effective September 1, 2013* | $309.70 per week |

Effective September 1, 2007*  *rate to be same as published by Central States, Southeast and Southwest Areas Health and Welfare Fund to maintain C-6 benefit level. *any potential health and welfare savings will be distributed to employees in the form of wages.

If an employee works only one (1) day in a week, the Employer shall contribute $34.00. If an employee works two (2) or more days in a week, the Employer shall contribute the full weekly contribution.

Any employee who is not a "regular employee" shall have contributions paid as follows:

Health and welfare at applicable hourly rate for all hours worked shall be included in his weekly paycheck, and he shall be responsible for making his weekly contribution to the Central States, Southeast and Southwest Areas Health and Welfare Fund, if eligible under the rules and provisions of the Central States Health and Welfare Plan.

*WEEKLY CONTRIBUTIONS THEN IN EFFECT SHALL BE PAID FOR EACH REGULAR EMPLOYEE FOR SUCH WEEK OR WEEKS WHILE HE IS ON VACTION.*

(e) Action for delinquent contributions may be instituted by either the Local Union or Central States, Southeast and Southwest Areas Health and Welfare Fund. Employers who are delinquent must also pay all attorneys' fees and costs of collection, and assume any liability for benefits not paid by virtue of their delinquency.

## Section 3. PENSION FUND

(a) The pension fund shall be the Central States, Southeast and Southwest Areas Pension Fund. There shall be no other pension fund under this contract.

(b) If an employee is absent because of illness or an off-the-job injury (which can be verified by a doctor or hospital statement) and notifies the Employer of such absence, the Employer shall continue to pay the required contributions for the period, if any,

necessary to give the employee pension qualifying credit for the year, but such period shall not exceed a total of four (4) weeks from the commencement date of absence.

If any employee is absent due to an on-the-job injury, the Employer shall continue to pay the required contributions for the period, if any, necessary to give the employee pension qualifying credit for the year, but such period shall not exceed a total of fifty-two (52) weeks from the commencement date of absence.

If an employee is granted a leave of absence, such employee shall make arrangements to pay or have paid the required amount of monies to the pension fund for the period of the leave of absence.

(c) Notwithstanding anything herein contained, it is agreed that in the event any Employer is delinquent at the end of a period in the payment of his contributions to the Central States, Southeast and Southwest Areas Pension Fund, in accordance with the rules and regulations of the Trustees of the Central States, Southeast and Southwest Areas Pension Fund, the Fund shall have the right to take such action as it deems necessary until such delinquent contributions are made, and it is further agreed that in the event such action is taken, the Employer shall be responsible to the employees for any losses resulting therefrom.

(d) The Employer shall make contributions for pension to the Central States, Southeast and Southwest Areas Pension Fund for each regular employee. The daily rate of contributions effective 9/1/2011 is $46.20 per day; effective 9/1/2012, $49.90 per day; effective 9/1/2013, $52.90 per day.

Weekly contributions shall be paid for each employee for such week or weeks while he is on vacation.

Any employee who is not a regular employee shall have pension contributions paid as follows:

Pension – 20% per day paid to Central States, Southeast and Southwest Areas Pension Fund

(e) Action for delinquent contributions may be instituted by either the Union or Central States, Southeast and Southwest Areas Pension Fund. Employers who are delinquent must also pay all attorneys' fees and costs of collection, and assume any liability for benefits not paid by virtue of their delinquency.

## Section 4. DELINQUENT CONTRIBUTIONS

(a) Contributions are due on the fifteenth (15) day of the month for the preceding month, but shall not be deemed delinquent until the last business day of the month in which the contributions are due.

(b) Notwithstanding anything herein contained, it is agreed that in the event the Employer is delinquent at the end of a period in the payment of his contributions to the Central States, Southeast and Southwest Areas Health and Welfare Fund or the Central States, Southeast and Southwest Areas Pension Fund, in accordance with the rules and regulations of the Trustees of the Central States, Southeast and Southwest Areas Health and Welfare Fund or the Central States, Southeast and Southwest Areas Pension Fund, either Fund shall have the right to take such action as they deem necessary until such delinquent contributions are made, and it is further agreed that in the event such action is taken, the Employer shall be responsible to the employees for any losses resulting therefrom.

(c) Action for delinquent contributions may be instituted by either the Union or either Fund. Employers who are delinquent must also pay all attorneys' fees and costs of collections, and assume any liability for benefits not paid by virtue of their delinquency.

## ARTICLE V
## GENERAL DUTIES OF EMPLOYERS AND EMPLOYEES

### Section 1. FURTHER THE CAUSE OF THE INDUSTRY

The Union and the Employers agree that each will do their utmost to further the cause of the industry.

### Section 2. EQUIPMENT, ACCIDENTS, REPORTS

(a) The Employer shall not require employees to take out on the streets or highways any vehicle that is not in safe operating condition, including, but not limited to, equipment which is acknowledged as overweight or not equipped with the safety appliances prescribed by law. It shall not be a violation of this Agreement or basis for discipline where employees refuse to operate such equipment, unless such refusal is unjustified. All equipment which is refused because it is not mechanically sound or properly equipped shall be appropriately tagged so that it cannot be used by other drivers until the maintenance department has adjusted the complaint. After such equipment is repaired, the Employer shall place on such equipment an "OK" in a conspicuous place so the driver can see the same.

(b) Under no circumstance will an employee be required or assigned to engage in any activity involving dangerous conditions of work or danger to person or property or in violation of any applicable statute or court order, or in violation of a government regulation relating to safety of person or equipment.

(c) The term "dangerous conditions of work" does not relate to the type of cargo which is hauled or handled. Any employee involved in any accident shall immediately report said accident and any physical injury sustained. When required by his Employer, the employee, before starting his next shift, shall make out an accident report in writing on forms furnished by the Employer and shall turn in all available names and addresses

of witnesses to the accident. Failure to comply with this provision shall subject such employee to disciplinary action by the Employer.

(d) Employees shall immediately, or at the end of their shift, report all defects of equipment. such report shall be made on a suitable form furnished by the Employer and shall not ask or require any employee to take out equipment that has been reported by any other employee as being in an unsafe operating condition until same has been approved as being safe by the mechanical department.

(e) When the occasion arises where any employee gives written report on forms in use by the Employer of a vehicle being in an unsafe working operating condition, and receives no consideration from the Employer, he shall take the matter up with the officers of the Union, who will take the matter up with the Employer. All newly-purchased or leased equipment used as City Peddle trucks and equipment regularly assigned to peddle runs must have steps or other similar devices to enable drivers to get in and out of the body.

(e) The Employer shall install heaters and defrosters on all trucks and tractors.

(f) Employers will be required to provide personal protective equipment (PPE) as currently noted with the exception of steel-toe metatarsal protective footwear and prescription safety eye wear which are the responsibility of the employees.

## Section 3. STOLEN GOODS

Employees shall not be responsible for goods stolen from the trucks under their charge except in cases where deliveries are made at the sidewalk or the truck is equipped with locks so that it can be securely locked while he is necessarily absent from the truck, or where an extra man is employed on the truck as a helper, or except where members of the Union are found guilty of proven gross negligence or proven dishonesty.

## Section 4. PHYSICAL OR MENTAL EXAMINATIONS

(a) Any Employer signatory to this Agreement will pay for any physical taken, including D.O.T. physical. Any employee required to take any physical other than the D.O.T. physical shall be compensated a flat rate of twenty-five dollars ($25.00), and the Employer will pay the cost of the physical.

(b) CDL requested random drug testing for all riggers including riggers who operate any equipment. When same is adopted by other crafts that the Employers are working with, this will be implemented at that time. The parties recognize the problems created by drug and alcohol abuse and the need to develop prevention and treatment programs. The Employer and the Union have a commitment to protect people and property and to provide a safe working environment. The purpose of the program is to

establish and maintain a drug-free, alcohol-free, safe and healthy work environment for all employees.

(c) When an employee loses his CDL as a result of his personal behavior, he will be placed at the bottom of the seniority list until he regains his CDL. During this period he will be assigned non-driving rigging work in accordance with his new position on the seniority board. After he regains his CDL, he will be returned to driving status and his original seniority position. This is to be effective September 1, 2003.

## Section 5. CHECKING GOODS

It shall be the duty of every employee when required by the Employer to carefully check all goods handled by such members, so that he knows that the delivery bills correspond with the goods handled, and any overages or shortages shall be promptly reported to the Employer.

## Section 6. VIOLATION OF RULES AND REGULATIONS

Violations on the part of the employee of the rules and regulations of the Employer, or violations of the rules and regulations provided by municipal, state, or federal law or authority, as related to transportation or to general conduct, or unnecessary delay in the transportation of freight, or any employee's proven dishonesty, carelessness, or incompetence, shall be considered cause for disciplinary action on the part of the Employer and shall subject the employee to temporary or permanent dismissal from employment.

## Section 7. DAMAGED EQUIPMENT AND GOODS

Employees shall not be responsible for damages done to the trucks operated by them or the merchandise under their charge, except in cases where the employee is found guilty of proven gross negligence.

## Section 8. PROPER USE OF MANPOWER

The Employer shall at all times man its equipment with a sufficient number of men properly to handle the load.

## Section 9. NON-CONFLICT

The Employer shall not ask employees to enter into any agreement in conflict with this Agreement.

## Section 10. INSTRUCTIONS TO CREW

Instructions from supervisory personnel are to be given to the foreman who shall relay them to the crew.

**Section 11. SENIORITY**

Any employee not on the seniority list of the Employer injured in an industrial accident or unable to report for work due to an illness or off-the-job injury (which can be verified by a doctor or hospital statement) while in the employ of the Employer shall have his period of eligibility to qualify for seniority extended by the number of days he is off work due to the accident or verified medical leave.

Any employee who is on transitional work duty shall not be subject to the seniority rules and shall be prohibited from performing any bargain unit work.

**Section 12. TOOLS**

All employees shall furnish their own small tools (for example, tape measure, 12-inch crescent wrench, vice grip, screw drivers, and 12-inch channel lock) before being permitted to work on a job. Employees who report to work without their tools and safety equipment will be sent home without pay on the third (3rd) offense, said penalty to be applied within a nine (9) month period.

Basic tool requirements for journeyman riggers:

a) Tape measure
b) 12-inch crescent wrench
c) Vice grip
d) Screw drivers
e) 12-inch channel lock
f) Metal tool box (to be supplied by the employer)
g) Set ½" drive sockets to 1¼"
h) Set open end or box ⅜" to 1¼"
i) Complete set of Allen wrenches ⅜" or ½"
j) Pair side cutters

**ARTICLE VI**
**SENIORITY**

**Section 1. SENIORITY LIST**

Seniority shall be obtained by employees who have achieved seniority in the rigging industry (Local #407) after the employee has started to work one hundred and ten (110) cumulative times, and has worked the daily minimum, within a six-month consecutive period; upon completion thereof, he shall be considered a regular employee and placed on the seniority list.

All employees on the seniority list can be considered for a foreman position.

Any employee not on the seniority list of the Employer injured in an industrial accident or unable to report for work due to an illness or off-the-job injury (which can be verified by a doctor or hospital statement) while in the employ of the Employer shall have his period of eligibility to qualify for seniority extended by the number of days he is off work due to the accident or verified medical leave.

(a) Time worked in this period replacing regular employees shall be counted for attaining seniority. The employee's seniority date shall be established as of the first (1st) day worked in this period. Seniority shall prevail for all employees covered hereunder. Seniority shall prevail for layoff, providing qualifications shall have application. However, no Employer shall circumvent seniority by use of job qualification. This does not apply to selection of the job foreman, which is the exclusive right of the Employer.

(b) The last man hired shall be laid off first, when the occasion arises for the laying off an employee. This employee shall be recalled when the working force is again increased. In the event more than one (1) employee is laid off, the employee(s) who are so laid off shall be recalled according to their seniority. Seniority shall be terminated only on a voluntary-quit, discharge, or more than a four (4) year layoff (subject to time limit under Central States, Southeast and Southwest Areas Pension Plan). Any employee laid off who works a total of twenty (20) cumulative days within any twelve (12) month period from his day of layoff shall be granted an additional four (4) years layoff from the date he worked such twentieth (20) day.

(c) Employees working in a "crew" shall have the exclusive right to conclude the job, including any premium time which may incur. However, this does not apply to casuals working in the "crew" on Saturday, Sunday, or holiday. Casuals are entitled to daily overtime unless there is more than one (1) crew working on the same job site, at which time the senior employee at the job site will be offered the overtime. Loading tools does not constitute working on a job.

When an employee works two (2) days or more on a job, and at the Employer's request is assigned another job prior to Friday, he shall return to the original job if it necessitates premium work on Saturday or Sunday or any holiday. The employee who replaces him, irrespective of seniority, shall not be entitled to the premium work. In the event the original employee declines the premium work, the employee who replaces him shall be entitled to the premium work.

There shall be no "bumping" into a "crew" unless a layoff becomes necessary. "Bumping" shall prevail on a layoff, based on seniority and qualifications. Layoff shall be anytime an employee is told on a normal work day (Monday through Friday) there is no work for this employee. In this instance, a senior employee may "bump" a junior employee. At the time of the layoff, the senior employee shall advise the Employer of his desire to exercise his seniority.

(d) The Employer has an obligation to advise the laid-off employee of any junior employees who may be scheduled to work while the senior employee is laid-off.

(e) The Union shall be entitled to a seniority list each six (6) months upon request.

The employer shall post a seniority list at least once every six (6) months. Employees shall make written complaint to the Employer and Union within thirty (30) days after such posting. Any such complaint not settled between the Employer and Union shall be submitted to the grievance procedure.

(f) There will be two (2) boards – a rigger seniority board and a driver board.

(g) Any member receiving a wage scale, condition, or vacation in excess of those set up in this Agreement shall not suffer a reduction in wages, condition, or vacation during the life of this Agreement, or by virtue of this Agreement.

(h) In the event an employee is on a job out of town, and if such employee is a junior employee on the seniority board, and a layoff occurs at the Employer's home plant, such junior employee shall have two (2) working days (forty-eight (48) hours) to remain on the job before he can be laid off and returned to the home plant.

In the event a senior employee has been offered the out-of-town work and has declined such work in writing, he shall have no claim to this work in the event he is laid off while the out-of-town job is in progress.

In the event an employee on an out-of-town job chooses to return to the home plant city prior to the completion of the out-of-town job, he shall be responsible to reimbursing the Company for his expenses, limited to round-trip travel time paid, round-trip travel costs incurred in getting the employee to the job site. Bona fide emergency situations shall be excluded.

(i) If the Employer assigns a senior employee as a truck driver for a period of time which may result in the senior employee earning less than a junior or casual employee, the employee may notify the Employer of this discrepancy. Upon notification, in writing, the Employer shall make such assignments as necessary to result in the senior employee earning equal pay with the junior or casual employee over the next thirty (30) days.

(j) Out of town work to be offered in seniority order based on availability. Refusal of one job will not prevent future out of town opportunities.

## Section 2. ASSIGNMENT OF WORK

(a) The right to assignment of work shall be exclusively with the Employer, in keeping with the procedure outlined in a "layoff". Seniority and qualifications shall prevail in the assignment of any "premium time" work or on a Saturday, Sunday, or holiday, subject to this Article.

(b) When weekend work is required, the Employer shall offer the work to the men who have worked during the week. If sufficient men do not accept the work, the Employer shall assign the junior men who worked during the week to work the overtime.

(c) Any employee called to work for a day is entitled to work any jobs required for that day. Any abuse of this article would be subject to the grievance procedure.

## Section 3. LAYOFFS

Seniority shall apply for layoff, provided qualifications shall have application and the right to assignment of unfairness shall be subject to the grievance procedure. Work opportunities shall be given to senior men, providing qualifications and business practices shall prevail, and if a claim of unfairness is made, it shall be subject to the grievance procedure.

## Section 4. MILITARY SERVICE

Any member of Local Union No. 407 who has been called or enlisted into the armed forces of the United States, or who has been drafted into defense work, may, at his option, return to the place where he was employed, immediately after his legal release, and not to exceed ninety (90) days from the date thereof. Each such employee will be reinstated, as far as possible in his former position; his rate of pay shall be at the prevailing rate—for the position accepted. it is expressly understood that each such member must be physically and mentally able to perform all the duties incident to the position accepted by him.

## Section 5. TIME CLOCKS

Time clocks shall be installed by the Employer, and time shall be recorded by employees.

**ARTICLE VII**
**SUSPENSION OF LICENSE**

In the event an employee shall suffer a suspension or revocation of his CDL license because of a succession of size and weight penalties, caused by the employee complying with his Employer's instructions to him, the Employer shall provide employment for such employee at not less than his regular earnings at the time of such suspension for the entire period thereof, subject, however, to the seniority and layoff provisions applicable to him at the time of such suspension.

**ARTICLE VIII**
**CHECK-OFF**

(a) The Employer agrees to deduct from the pay of all employees covered by this Agreement the dues, initiation fees, and/or uniform assessments of the Local Union having jurisdiction over such employees, and agrees to remit to said Local Union all such deductions prior to the end of the month for which the deduction is made. Where laws require written authorization by the employee, the same is to be furnished in the form required. The Local Union shall certify to the Employer in writing each month a list of its members working for the Employer who have furnished to the Employer the required authorization, together with an itemized statement of dues, initiation fees (fully or installment) or uniform assessments owed and to be deducted for such month from the pay of such member, and the Employer shall deduct such amount from the first (1st) paycheck following receipt of the statement of certification of the member and remit to the Local Union in one lump sum. The Employer shall add to the list submitted by the Local Union the names of all regular new employees hired since the last list was submitted and delete the names of employees who are no longer employed.

(b) Check-off shall be on a monthly basis. When an Employer actually makes a deduction for dues, initiation fees, and assessments, in accordance with the statement received from an appropriate Local Union, he shall remit same no later than thirty (30) days from the date such deduction was made, and in the event he fails to do so, he shall be assessed ten percent (10%) liquidated damages.

(c) The Employer will recognize authorization for deductions from wages if in compliance with state law, to be transmitted to the Local Union, the credit union, or to such other organizations as the Local Union may request, if mutually agreed to, except DRIVE deductions, which shall be made annually. No such authorization shall be recognized if in violation of state or federal law. No deduction shall be made which is prohibited by applicable law.

(d) In the event that an Employer has been determined to be in violation of this Article by the decision of an appropriate grievance committee, and if such Employer subsequently is in violation thereof after receipt of seventy-two (72) hours written notice of specific delinquencies, the Local Union may strike to enforce this Article. However, such strike shall be terminated upon the delivery thereof. Errors or inadvertent omissions relating to individual employees shall not constitute a violation.

## ARTICLE IX
## TRADE SHOWS, ETC.

Any Employer who is a signator to this Riggers Contract with Local 407 (IBT) who becomes involved in what is considered a trade show, shall be bound by all provisions of that trade show contract currently in effect with Teamsters Local 407, and it shall be in full force and effect.

## ARTICLE X
## LUNCH PERIOD

(a) The lunch period may be taken between the fourth (4th) and sixth (6th) hour of work. The lunch period shall not be less than one-half (d1/2) hour or more than one (1) hour; however, changes in the present lunch period arrangements shall not be made unless mutually satisfactory to the Employer and the Union. No employee shall be compelled to take more than one (1) meal period in a tour of duty (unless directed to by the foreman or the Employer).

(b) Each employee shall be entitled to a ten (10) minute coffee break between the second (2nd) and third (3rd) hour while on duty and entitled to another ten (10) minute coffee break between the sixth (6th) and eighth (8th) hour while on duty. No coffee breaks will be taken on overtime, excluding premium days.

(c) The Employer recognizes circumstances may require deviation from the time schedule, but in no case will there be more than two (2) coffee breaks.

## ARTICLE XI
## OTHER EMPLOYMENT

### Section 1. EXCEPTIONS, LAYOFFS

The Employer shall not employ in any capacity any person who is otherwise regularly employed, provided, however:

(a) This provision shall not apply where the Employer is presently using otherwise regularly employed persons who have acquired seniority and are receiving all other benefits of the Agreement, including fringe benefits. Such persons may be continued in employment.

(b) The Employer may hire persons who are otherwise regularly employed if other manpower is not available. Disagreement as to availability shall be subject to the grievance procedure. Such persons shall receive all benefits they are entitled to under the Agreement.

(c) In the event of a layoff, employees who have regular outside employment shall be first laid off, regardless of such employee's seniority standing, unless such employee immediately terminates such outside employment. In the event there are two (2) or more employees having regular outside employment, the Employer shall lay off the employees having the latest date of hire.

(d) Any employee so laid off shall, as a condition of recall, terminate other regular employment which he may have, unless qualified for recall under Item (b) above.

## ARTICLE XII
## GARNISHMENT

In the event of notice to an Employer of a garnishment or impending garnishment, the Employer may take disciplinary action if the employee fails to satisfy such garnishment within a seventy-two (72) hour period (limited to working days) after notice to the employee. However, the Employer may not discharge any employee by reason of the fact that his earnings have been subjected to garnishment for any one (1) indebtedness. If the Employer is notified of three (3) garnishments, irrespective of whether satisfied by the employee within the seventy-two (72) hour period, the employee may be subject to discipline, including discharge in extreme cases. However, if the Employer has an established practice of discipline or discharge with fewer number of garnishments or impending garnishments if the employee fails to adjust the matter within the seventy-two (72) hour period, such past practice shall be applicable in those cases.

This Article shall be subject to applicable law. The parties will review the operation of this Article after one (1) year from the effective date of this Agreement in light of whatever new legal developments have occurred relating to garnishments.

## ARTICLE XIII
## FUNERAL CLAUSE

(a) In the event of a death in the family (Father, Mother, Wife, Husband, Brother, Sister, Son, Daughter, or Stepchildren), a regular employee shall be entitled to two (2) eight (8) hour days' funeral pay, regardless of the day of death or the day of the funeral.

(b) "Regular employee" is defined as an employee who has worked fifty percent (50%) of the previous twelve (12) month period, preceding death in family.

## ARTICLE XIV
## JURY DUTY

In the event that an employed member of Local Union No. 407 is called for jury duty the Employer will provide the employee with one check in the amount of one-hundred and seventy-five dollars ($175.00) for miscellaneous expenses while serving on jury duty.

## ARTICLE XV
## ON-THE-JOB INJURY

An employee who is injured on the job and is sent home, to a hospital, or who must obtain medical attention shall receive eight (8) hours pay at the applicable hourly rate, which shall include time worked on that day. An employee who has returned to his regular duties after sustaining a compensable injury who is required by the workers' compensation doctor to receive additional medical treatment during his regularly scheduled working hours shall receive his regular hourly rate of pay for such time. An employee injured on the job shall notify his foreman at the time of the injury and submit a written report to his Employer at the end of his work day, unless hospitalized.

Any employee not on the seniority list of the Employer injured in an industrial accident or unable to report for work due to an illness or off-the-job injury (which can be verified by a doctor or hospital statement) while in the employ of the Employer shall have his period of eligibility to qualify for seniority extended by the number of days he is off work due to the accident or verified medical leave.

# ARTICLE XVI
## TWO (2) WEEK MILITARY LEAVE

The Employer shall pay the Health and Welfare and Pension Fund contributions on employees on leave of absence for training in military reserves or National Guard, but not to exceed fourteen (14) days, providing such absence affects his credits of coverage for Health and Welfare and/or Pensions. Such contributions shall be paid to the Central States, Southeast and Southwest Areas Health and Welfare Fund and/or Central States, Southeast and Southwest Areas Health and Welfare Fund for forty (40) hours each week.

# ARTICLE XVII
## MISCELLANEOUS

### Section 1. "LIFT TRUCKS" OR "CATS"

"Lift trucks" or "cats" may be transported under their own power in the immediate vicinity of the job site or terminal, and when transported under their own power beyond the abovementioned limitation, it shall be escorted by a motor vehicle.

### Section 2. HAZARDOUS MATERIALS

Employees handling hazardous material will be provided the recommended safety equipment. The Employer will comply with all government regulations and pay for any personal equipment and training required by law.

### Section 3. RECALL

The Employer shall notify all employees of the following day's work schedule by 2:00 p.m. (when possible) and no later than 5:00p.m. A regular employee recalled to work must report for work within the time specified for his recall, and in no event any later than twenty-four (24) hours after recall. If a junior employee with qualifications is available to replace the senior employee, the senior employee may be excused for that day; however, that senior employee must continue to call his Employer daily. In the event an employee is called to work by an employer other than his regular Employer, he shall immediately notify his regular Employer and give his regular Employer the opportunity to recall him before accepting any work with any other employer. Failing to do so, such employee shall forfeit his seniority with his regular Employer.

Call procedures shall be in accordance with the procedures as established at each Employer, which shall not be in conflict with the provisions of this Agreement and will be included in the work rules published and in effect at each Employer.

## Section 4. APPRENTICE PROGRAM

(a) New Hire Training Program – Employees who are newly hired without documentation of prior work in the machinery moving industry (Local 407) shall be at eighty (80%) of the wage rate for the first year of employment, ninety (90%) percent of the wage rate for the second year of employment and at full wage rate (100%) starting the third year of employment. At the end of the third year he will be eligible for seniority in accordance with the contract.

The employer will provide training and safety courses in conjunction with the union.

(b) Journeyman Upgrading. Minimum of sixteen (16) hours of unpaid safety training will be required yearly. CPR and First Aid training may be part of this requirement.

## Section 5. RETURN RIGHTS IF ELECTED TO UNION OFFICE

Any Union employee being elected, selected, or appointed to serve as a Union official in either the Local or the International, shall, upon application to the Employer, be granted an indefinite leave of absence without pay.

Upon return of the Union employee from a leave of absence referred to above, he shall, provided he has sufficient seniority, be reinstated to his regular job at its then current status with full accumulated seniority. All leaves of absence granted for the above shall be in writing and signed by the proper Employer representatives and by the President and/or Secretary-Treasurer of the Local Union.

## Section 6. RIGGER CERTIFICATION

A rigger is a qualified person able, without supervision, and with assistance of other employees to relocate machinery with or without power equipment and who can pass a written test consisting of materials from the rigger handbook and the characteristics and safety factors of rigging equipment and rigging procedures as adopted by the NCCC.

## Section 7. STANDARDS TO WEARING APPAREL

The employer has the right to establish and maintain reasonable standards for wearing apparel and personal appearance based on safety considerations.

## Section 8. COLLECTIVELY BARGAINED WORKERS' COMPENSATION PROGRAM WITH ALTERNATIVE DISPUTE RESOLUTION ("ADR")

As alternative dispute resolution (ADR) programs continue to grow in popularity and efficiency throughout the country, and in recognition of anticipated legislation on the issue, it is agreed to by both parties to develop a program that is mutually acceptable to Labor and Management if passed by the State of Ohio.

## ARTICLE XVIII
## STEWARDS

### Section 1. JOB STEWARDS

The Employer recognizes the right of the Local Union to designate job stewards and alternates in each garage or terminal. His or their duties shall in no way conflict with his or their duties to the Employer. The stewards and/or alternates shall have the right to ascertain the standing of the various and several employees in said garage or terminal and report said standing to the said Local Union. The stewards shall have the further right to take notice of and report any and all grievances to the Union. Said stewards and/or alternates shall not have the authority to call a strike or a stoppage of work.

### Section 2. WORK STOPPAGES

Job Stewards and alternate have no authority to take strike action, or any other action interrupting the Employer's business, except as authorized by official action of the Local Union. The Employer recognizes these limitations upon the authority of job stewards and their alternates, and shall not hold the Union liable for any unauthorized acts. The Employer, in so recognizing such limitations, shall have the authority to impose proper discipline, including discharge, in the event the shop steward has taken unauthorized strike action, slowdown, or work stoppage in violation of this Agreement.

## ARTICLE XIX
## STRUCK GOODS

It shall not be a violation of this agreement, and it shall not be cause for discharge, disciplinary action, or permanent replacement, in the event an employee refuses to enter upon any property involved in a primary labor dispute, or refuses to go through or work behind any primary picket line, including the primary picket line of unions party to the Agreement, and including primary picket lines at the Employer's place of business.

It shall not be a violation of this Agreement and it shall not be cause for discharge, disciplinary action, or permanent replacement if any employee refuses to perform any service which his Employer undertakes to perform as an ally of any Employer of person whose employees are in strike, and which service, but for such strike, would be performed by the employees of the Employer or person on strike.

## ARTICLE XX
## NON-DISCRIMINATION

The Employer and the Union agree not to discriminate against any individual with respect to hiring, compensation, terms or conditions of employment because of such individual's race, color, religion, sex, national origin, handicap, veteran status or age in violation of any federal or state law, or engage in any other discriminatory acts prohibited by law, nor will they limit, segregate or classify employees in any way to deprive any individual employees of employment opportunities because of race, color, religion, sex, national origin, handicap, veteran status or age in violation of any federal or state law, or engage in any other discriminatory acts prohibited by law.

## ARTICLE XXI
## DISPUTES AND ARBITRATION

### Section 1. DISCIPLINARY ACTION

The Employer shall not discipline any employee without first issuing to the employee and the Union, in writing, the alleged violation. No employee shall be taken out of service without a "hearing" with an authorized representative of the Union present. This meeting shall take place within ten (10) days of said alleged violation. Any violation of this on the part of the Employer shall constitute a flagrant violation by the Employer, and subject the Employer to full compensation and fringes to the affected employee or employees for any loss of earnings.

Any grievance, written or oral, by any employee or any Employer under this contract may become the subject of conference and negotiation between the said Employer and employee directly. In the event same cannot thus be adjusted, it shall then become a matter of negotiation between the said Employer and employee in conference with the representative of the said Union and representatives of the Employer's group.

When a hearing is requested by the Company at the company level, the steward and the employee shall be compensated for time spent during such hearing; otherwise, only the steward shall be compensated.

### Section 2. WORK STOPPAGES

No stoppages, strikes, or lockouts shall be commenced by the employees or Employers under this Agreement without first giving each other five (5) days' written notice of such intention to interrupt service, and without further giving such notice to the authorized representatives of the Local Union and/or Employers' group, nor, except in the case of a willful violation, without first submitting to arbitration the said dispute or disagreement arising between the said parties with regard to any and all matters pertaining to the employment of the said member. In the event of a willful violation, it shall not be necessary for the Employer and employee to give to each other, and to the

Local Union and to the Employer's group, or its advisory committee, five (5) days' written notice in advance of such intention to interrupt service.

## Section 3. "SYMPATHY STRIKES"

(a) It is hereby agreed by and between the said Local Union and the said Employers' group that during the term of the within Agreement they shall not in any manner be engaged, for any reason whatsoever, in so-called sympathy strikes or lockouts in support of grievance of or against employees who are not employed in Cleveland by members of said Employers' group, or of such employees as are not members of Local Union No. 407 or engaged in the trucking, rigging, machinery moving, or erecting industries with the City of Cleveland.

(b) The Employers shall not ask or require Employees to enter into any agreement in conflict with this Agreement. The Union agrees to grant to all members of the employer group such benefits, favors, privileges, or conditions as it may choose to grant to any other trucking, rigging, machinery moving, or erecting company or employer operating in this vicinity.

(c) In the event the Union executes any other agreement with any Employer for the classes of work covered by this Agreement, an exact copy of said new agreement shall be submitted by the Local Union to the said Employers' group for examination. Should any part or parts of such new agreement be deemed more advantageous than any part of parts of this Agreement, the Employers' group may demand and receive from the Local Union any part or parts of the new agreement, by notifying the Local Union in writing of such desire. All terms and or conditions so adopted by the Employers' group are to be considered a part of this Agreement.

(d) The violation by any one Employer or employee of the terms of the within contract shall not prejudice the rights of all of the other Employer and employee parties to the within Agreement as to the continuance of their undisturbed operations.

(e) All Employers operating under this or any other wage agreement with Local Union No. 407 shall be required to execute said agreement in triplicate; one (1) copy of said agreement shall by filed with the Employers' group.

## Section 4. VIOLATIONS

Violations on the part of the employee, member of the Union, of the rules and regulations of the Employer, or violations of the rules and regulations provided by municipal, state or federal law or authority, as related to transportation of freight, or unnecessary delay in the transportation of freight, or any employee's carelessness, shall be considered cause for disciplinary action. In the event the Employer shall consider days taken off for personal reasons or illness to be habitual, the grievance procedure shall apply. However, no member of the Union shall be discharged, suspended, or taken out of service, except for proven dishonesty or proven being under the influence of liquor and/or

controlled substances or drinking while on duty or when operating any company equipment at any time, or carrying unauthorized passengers without first being given a hearing by the Employer with an officer of the Union present at the hearing. Rules and regulations of the Employer shall not be in conflict with this Agreement, and employees shall have knowledge of such rules and regulations. The Employers' rules must be submitted for approval.

## Section 5.  CAUSES FOR DISCHARGE

The policy of the Signatory Contractors in reference to complaints by customers of unprofessional behavior on the jobsite, is to comply with OSHA Standards and the customers' rules regarding such behavior applicable to the work being performed at its various jobsites.

In order to ensure compliance to, and uniform enforcement of these standards and rules please be advised that the following guidelines will be in effect for individuals found in violation of such:

1st offense              verbal warning

2nd offense             written warning

3rd offense             written warning with possible time off subject to a hearing

4th offense             discharge subject to a hearing

    The Employer shall not discharge or suspend any employee without just cause. No employee shall be suspended or discharged without first being given one (1) warning letter of a complaint and also be given a local level hearing, except for the following offenses:

  (a) dishonesty;

  (b) under the influence of alcoholic beverages or controlled substances

  (c) personal possession or use of controlled substances

  (d) gross negligence, resulting in a serious accident. A serious accident is defined as one in which there is a fatality, a bodily injury to a person who, as a result of the injury, receives immediate medical treatment away from the scene of the accident, or $2,000 or more in damages;

  (e) the carrying of unauthorized passengers while on the job;

  (f) failure to immediately report an accident that the employee had or should have had knowledge of; or as soon as possible;

  (g) an avoidable accident;

(h) other serious offenses, including but not limited to, work place violence and/or assault or battery.

With the above exceptions, no employee who is discharged or suspended shall suffer any loss of pay or benefits until the grievance procedure has been completed. The Employer liability will stop

(a) if the discharge is sustained;
(b) if the Union fails to follow the procedures.

In an effort to expedite the resolution of a discharge or suspension grievance filed by an employee, the Union shall make itself available for hearing within ten (10) days of a request by the Employer.

If the grievance is deadlocked at the local hearing, it should move to the next step in the grievance procedure.

The warning letter, as herein provided, shall be given to the employee with a copy of said letter to the Union within ten (10) days of knowledge of said complaint and shall not remain in effect for a period of more than nine (9) months from date of said warning letter.

Habitual absenteeism or tardiness shall be subject to disciplinary action.

## ARTICLE XXII
## GRIEVANCE PROCEDURE

**Section 1.** It is recognized that in any grievance procedure the sound and reasonable judgment of the aggrieved employee or employees, the Union and the Company's management are vital and important factors. By virtue of the Article, it is the intention and desire of the Company and the Union to provide a quick, efficient, fair and reasonable means of adjusting and settling grievances with a minimum interruption of work.

**Section 2.** Any complaint or grievance, including but not limited to those arising by reason of discharge or suspension must be initialed by the aggrieved employee within five (5) working days after the occurrence, or non-occurrence, of the event on which the complaint or grievance is based. A complaint or grievance, so initiated, shall be adjusted in accordance with the following procedure:

Step 1. (a) In the event a dispute arises, the aggrieved employee shall first present the same orally to his supervisor. The supervisor shall have the right to consider said dispute for two (2) working days immediately following the day on which the grievance was presented, and he shall orally inform the employee of his decision thereon.

(b)   If the dispute is not resolved as a result of (a) above, the aggrieved employee and the Union Steward shall discuss the matter with the supervisor within two (2) working days thereafter.  The supervisor shall have two (2) working days following said discussion to advise the employee and the Steward of his decision.

After the first step, no grievance shall be considered unless it is in writing and signed by the aggrieved employee.

Step 2.  If the grievance is not satisfactorily adjusted by his supervisor, and the aggrieved  employee wishes to process the same further, said grievance must be reduced to writing, signed by the aggrieved employee, and filed with the Company and with the Union within five (5) working days immediately following the day on which the decision of the supervisor was made.  As soon thereafter as a meeting for that purpose can be arranged, such grievance shall be considered by the Business Representative of the Union and the Terminal Manager or other designated company official.  Any agreement reached shall be final and binding on both parties with no further appeal.

Step 3 – It is agreed that all disputes under this Agreement, after the provision of Section 2 of this Article have been exhausted, shall be submitted to the grievance machinery established by The Cleveland Draymen Association, Inc., and Truck Drivers Union Local No. 407 (IBT), at Cleveland, Ohio and to the accepted and authorized committee of the Union and the Association and that such grievances shall be submitted in writing and shall be heard in accordance with the schedule of hearings and under and by the rules of the Cleveland Local Grievance Committee, as presently established and in effect.

Step 4.  Labor and Management agree to utilize the services of the Federal Mediation and Conciliation Service prior to Step 5.

Step 5.  If the grievance is not resolved at the Step 4 meeting, either of the parties to this Agreement may, within five (5) working days immediately following said meeting, or any adjournment thereof, give notice in writing to the other of its intention to submit the matter to an impartial third person for arbitration.  Such arbitrator shall be selected by mutual agreement of the parties hereto within ten (10) working days immediately following the receipt by one party of the notice by the other party of its intention to submit the matter for arbitration. In the event that the parties hereto are unable to mutually agree upon such an impartial third person, they shall join promptly in requesting Ohio Arbitration and Mediation Center, Inc. (216) 929-9000, to submit a list of seven (7) qualified arbitrators from which one (1) shall be selected as follows:

The aggrieved party shall first strike one name from this list.  The adverse party shall then strike a name from the list.  The procedure shall be

repeated in the same sequence twice again until one name remains on the list. He shall be the arbitrator of the dispute. The decision of the arbitrator shall be final and binding on the parties thereto, with no appeal or recourse there from on the part of either party. It is understood and agreed that there shall be no work stoppage or slowdown during the course of the grievance procedure.

The fee of the Arbitrator and the cost of the meeting room, if any, shall be equally divided between the Company and the Union. Each party shall pay their own representative and witnesses.

**Section 3.** It is understood and agreed that any arbitrator to which a grievance is submitted as above shall be without jurisdiction or authority to add to, detract from, alter or otherwise amend in any way any of the provision of this Agreement or supplements or appendices thereto; the jurisdiction and authority of such arbitrator(s) insofar as shall be necessary for the determination of such grievance being expressly limited to the interpretation, application, and determination of compliance with the provisions of the Agreement and supplements and/or appendices thereto; relating to the rates of pay, wages, hours of work and other conditions of employment as set forth herein.

**Section 4.** It is further understood and agreed that no employee covered by this Agreement shall be discharged or suspended without first being given a hearing by the Company with an official of the Union present at the hearing; provided however, that such hearing is not required prior to discharge for the following offenses: dishonesty, drinking of alcoholic beverages, use of narcotics (as described by the Pure Food and Drug Act), barbiturates or amphetamines while on duty, or refusal to submit to random drug testing, other serious offenses, including but not limited to, work place violence and /or assault or battery, the carrying of unauthorized passengers, or failure to report a serious accident or one which the employee would normally be aware of, or violation of Article XX of this Agreement.

**Section 5.** In order to expedite the processing of grievances arising out of or resulting from the discharge or suspension of an employee covered by this Agreement, the grievance procedure in such cases shall begin at the point in Step 2 which provide for the filing with the Company and with the Union of a grievance reduced to writing and signed by the aggrieved employee. Such grievance shall be filed within five (5) working days immediately following the day on which the above described hearing had been held. Should subsequent proceedings prove that an injustice has been done to an employee, he shall be reinstated. The terms and conditions of such reinstatement may provide for the partial or no compensation for time lost as the Committee renders the decision or the Arbitrator shall determine.

**Section 6.** Failure of any Joint Committee to meet without fault of the complaining side, refusal of either party to submit to or appear at the grievance procedure at any stage, or failure to comply with any final decision, withdraws the benefits of this procedure.

## ARTICLE XXIII
## ADA AND FAMILY & MEDICAL LEAVE

It is agreed by and between the Employers herein that the Union and the Employers comply with the American with Disabilities Act as it pertains to the collective bargaining process, and they will also comply with the federal law pertaining to the family leave language, wherever applicable.


## ARTICLE XXIV
## SEPARABILITY AND SAVINGS CLAUSE

If any Article or Section of this Agreement, or of any Supplement or Riders thereto, should be held invalid by operation of law or by any tribunal or competent jurisdiction, or if compliance with enforcement if any Article of Section should be restrained by such tribunal pending a final determination as to its validity, the remainder of this Agreement and of any Supplements or Riders thereto, or the application of such Article or Section to persons or circumstances other than those as to which it has been held invalid or as to which compliance with or enforcement of has been restrained, shall not be affected thereby.

In the event that any Article or Section is held invalid or enforcement if or compliance with which has been restrained, as above set forth, the parties affected thereby shall enter into immediate collective bargaining negotiations after receipt of written notice of the desired amendments by either Employer or Union for the purpose of arriving at a mutually satisfactory replacement.

## ARTICLE XXV
## EMERGENCY REOPENING

In the event of war, declaration of emergency, or implementation of economic controls during the life of this Agreement, either party may reopen the same upon sixty (60) days written notice and request renegotiation of matters dealing with wages and hours. There shall be no limitation of time for such written notice. Upon the failure of the parties to agree in such negotiations, within sixty (60) day thereafter, either party shall be permitted all lawful economic recourse to support its request for revisions. If governmental approval of revisions should become necessary, all parties will cooperate to the utmost to attain such approval. The parties agree that the notice provided herein shall be accepted by all parties as compliance with the notice requirements of all applicable law, so as to permit economic action at the expiration thereof.

## ARTICLE XXVI
## EFFECTIVE DATE

This Agreement shall become effective as of September 1, 2011 and shall continue in full force and effect through August 31, 2014, and shall remain in effect from year to year thereafter, unless terminated by written notice by either party ninety (90) days prior to such expiration date and, further, that upon the presentation of written notice served by one party on the other at least sixty (60) days before August 31, 2014, the contract may be reopened.

## ARTICLE XXVII
## OTHER AGREEMENTS

It has been agreed that Truck Drivers Union Local No. 407 (IBT) will not enter into any written or oral agreement with anyone on terms and conditions more advantageous that those contained in this Agreement. If Truck Drivers Union Local No. 407 (IBT) should, for any reason, enter into an agreement with anyone of terms and conditions more advantageous than those contained in this Agreement, then such advantageous terms and conditions shall be made available to all Employers signatory hereto.

THE UNDERSIGNED COMPANY AGREES TO BE BOUND IN FULL BY THE FOREGOING AGREEMENT

NORRIS BROTHERS COMPANY INC.

By: _Bernard E. Wren Jr_ _CEO_
                                                Title

Date: _March 2 2012_

THE TRUCK DRIVERS UNION LOCAL NO. 407 OF THE INTERNATIONAL BORTHERHOOD OF TEAMSTERS

By: _Frank Bushell_
                                                President

Date: _3/9/12_

Recommended for ratification by the negotiating committee for the Union and approved by ballot vote of the membership.

**UNION NEGOTIATING COMMMITTEE**

FRANK BURDELL, President

DENNIS ROBERTS, Business Representative

PAUL HARNICHAR, Membership Representative

RICHARD COOK, Membership Representative

**EMPLOYER NEGOTIATING COMMITTEE**

JAMES J. TESAR, Chairman
       Tesar Industrial Contractors, Inc.

BERNARD E. WEIR, JR.
       Norris Bros. Co., Inc.

JOHN RIDZY
       Tesar Industrial Contractors, Inc.

ROBERT MILLER
       Tesar Industrial Contractors, Inc.

TIM LINDVILLE
       Construction Employers Association